LACEY *v.* PELUS *et al.*

(In Banc. May 14, 1945.)

[22 So. (2d) 239. No. 35864.]

186

Williams & Williams, of Poplarville, and Chas. A. Noone, of Chattanooga, Tenn., for appellant.

**Hall & Hall**, of Columbia, for appellees.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

This is an appeal from the Chancery Court of Pearl River County, involving the issue of whether or not a gift was made inter vivos to appellees of certain household furniture and effects in the servants' quarters of the home of Mrs. Lotta Lacey Barnard, where appellees lived as her servants during her lifetime. Mrs. Barnard died June 13, 1943, testate, and among the beneficiaries in her will was Mrs. Harry Lacey of Chattanooga, Tennessee, a cousin, who claimed the identical property involved in the alleged gift to appellees, Rudolph Pelus and his wife, on the theory that the will bequeathed the same to her. The issue was presented to the chancery court in the administration of the estate of the said testatrix, Mrs. Barnard, the executors of her will being made parties by appellees to their petition for a decree awarding to them the personal property involved in this litigation.

The petition listed the property which appellees sought, alleging that the testatrix had made them a gift of it long prior to her death in gratitude for their faithful services to her, and that the same was in the possession of the executors in storage, who were aware of the fact that it had been given and delivered to petitioners as an absolute gift by the deceased. It was also alleged that the appraisers appointed by the court did not list any of this property in their report, intentionally omitting the same as a recognition of the ownership thereof by petitioners. The executors, Lamont Rowlands and Willis G. Wilmot, filed an answer admitting the averments of the petition, and stated they did not have the property included in their inventory, and did not have it appraised because they knew the property did not belong to the estate, but

did belong to the petitioners, and conceded that petitioners were entitled to the immediate possession thereof. Mrs. Harry Lacey, aforesaid, filed an answer in her own behalf to this petition, admitting the petitioners were husband and wife and they had been employed by Mrs. Barnard as her servants at the time of her death and for a considerable period of time prior thereto, and resided in the servants' home furnished them by the deceased in Pearl River County, Mississippi. However, she denied the gift of the furniture and household effects listed as having been made and delivered to them by Mrs. Barnard in view of their faithful service to her. On the contrary, she claimed that it had been devised to her by virtue of Section 2 of the last will and testament of Mrs. Barnard, as follows:

"(a) It is my will that my cousin, Mrs. Harry Lacy of 204 East Brow Road, Lookout Mt. Chattanooga, Tennessee, have during her life, and I do hereby devise and bequeath unto her, my home near McNeill in Pearl River County, Mississippi, situate on the lands described as follows: to-wit: E½ of SW¼ of SW¼ of Section 21, and the E½ of W½ of NW¼ of Section 28, all in Township 4 South, Range 17 West, and also a parcel of land described by metes and bounds as follows, to-wit: Beginning at the Northeast corner of the W½ of SW¼ of SW¼ of Section 21, Township 4 South, Range 17 West, thence run West 236.5 feet, thence run South 1750 feet, thence South 85 degrees 45 minutes East 237 feet, thence run North 1767.5 feet to the place of beginning containing 9.8 acres more or less and being a part of the W½ of SW¼ of SW¼ of Section 21, Township 4 South, Range. 17 West, and a part of the W½ of NW¼ of Section 28, Township 4 South, Range 17 West, including all lands, dwellings, outbuildings, household and kitchen furniture and fixtures, in fact, in addition to the said home place, all personal property of every nature and kind, both inside and outside, used in connection with said home and going to make up said home place complete, the said Mrs.

Harry Lacey to have said property during her life, at her death, all of said property to go to, and in that event I do hereby devise and bequeath same unto the two children of the said Mrs. Harry Lacey, to-wit, Kenneth R. Lacey, her son, and Elizabeth Lacey Cameron, her daughter, each of said children to take said property share and share alike, that is, each of said named children to take an undivided one-half interest in said property.

"(b). It is my will that in the event the said Mrs. Harry Lacey predecease me, then in that event, the property in this section next above described to go to her two children, to-wit, Kenneth R. Lacey, her son, and Elizabeth Lacey Cameron, her daughter, as hereinbefore provided, or to the issue of their bodies.

"(c) In addition to the above bequest to my cousin, Mrs. Harry Lacey, I further devise and bequeath unto her the sum of Twenty Thousand and no/100 ($20,000.00) Dollars, to be by my executors delivered over unto her, either from cash on hand at the time of my death, or from cash derived from my estate after my death, it being my will and desire that she have the full $20,000.00 without any diminution thereof by reason of any shortage so long as my estate is sufficient to pay said amount."

She also contended that petitioners were rewarded exclusively by Mrs. Barnard by means of a bequest to them in Section 4 of her will, as follows:

"I hereby devise and bequeath unto my two servants Rudolph Pelus and his wife, Ella Pelus, whose address is c/o Otto Polisensky, 900 Ernving Avenue, Ellicott, N. Y., Box 42, who have been faithful employees, conditioned upon their remaining in my employ during the remainder of my life, One Thousand ($1,000.00) Dollars, jointly for each year that they have been in my employ, the said period of time to begin October 1, 1942, and to continue until my death, it being understood that in the event of the death of either of said servants and the other remaining faithful to me, and in my employ, until my death, the said survivor shall take the share of such

deceased employee, that is, the survivor shall receive the sum of $1,000.00 per annum for said period of time."

In addition, Mrs. Lacey averred they were amply compensated by wages of $175 per month and a home and board during Mrs. Barnard's lifetime. Her answer was made a cross-bill, the averments of which, by agreement, were denied, in short, by appellees.

The chancery court heard the case and awarded all of the property listed to the petitioners, holding them to be the owners thereof, and ordered same to be delivered to them. Only two witnesses testified, Mr. Lamont Rowlands, one of the executors, and Mrs. Rowlands, his wife. The other evidence was documentary. With reference to the gift of the property to appellees, Mr. Rowlands stated that he had known Mrs. Barnard a long time and that they were close personal friends. It will, of course, be borne in mind that he was one of her executors. On one occasion, he was at her home when, according to him, the following occurred: "We were on the terrace back of the house talking. She said 'I wish you would come with me, I want to show you something'. She took me into Rudolph and Ella's rooms. She said, 'I have given all this furniture to Rudy and Ella,' she called them, 'I want them to have it. They have been faithful to me, and I want them to have enough furniture to start housekeeping.' " He did not remember whether this conversation occurred before or after the execution of the will by Mrs. Barnard.

Mrs. Lamont Rowlands testified that she too had been a close and intimate personal friend of Mrs. Barnard for thirty or thirty-five years, and that she also knew the petitioners, who were employed as companions and servants of Mrs. Barnard, and she was familiar with the property involved in this litigation. In testifying on the issue, and in answer to this question: "What, if anything, did she tell you with reference to what she had done with this property involved here?" she stated, "She said in settling the house that she had given the things to Rudy

and Ella in their rooms for them to have in the future."
She testified further on cross-examination that Mrs.
Barnard gave it to petitioners for their rooms and for
them to have, which was before the will was made in
1943. She further stated that appellees kept their other
belongings and clothes, and intimate personal property,
in these same servants' quarters, and that the property
remained in the servants' quarters until after the death
of Mrs. Barnard..

The question narrows itself to the effect of this language
in the will, Section 2 (a), with reference to the bequest
to Mrs. Harry Lacey, as affected by the conversations
between Mrs. Barnard, the testatrix, and Mr. Lamont
Rowlands, one of her executors, and Mrs. Rowlands, viz.:
"household and kitchen furniture and fixtures, in fact, in
addition to the said home place, all personal property of
every nature and kind, both inside and outside, used in
connection with said home and going to make up said
home place complete." In construing this section of the
will, we must also bear in mind that Mrs. Lamont Row-
lands testified that Mrs. Barnard had given the house-
hold effects in the servants' quarters to appellees before
the will was executed by Mrs. Barnard. Also of interest
in this connection is the fact that the gift of this furniture
to appellees was not conditional upon their remaining
in her employ, or upon any other condition, while in her
bequest to them in her will, she made this proviso: "con-
ditioned upon their remaining in my employ during the
remainder of my life."

Appellant contends that there was no proof of a de-
livery of the articles described in the petition to appellees,
and that the property remained in the possession of, and
under the control of, Mrs. Barnard during her lifetime,
and was expressly bequeathed to her under the last will
and testament of Mrs. Barnard, and that the same was
not excepted from the will. It is her further contention,
as stated supra, that appellees were amply compensated
for their services by their wages of $175 per month, room

and board, and were generously rewarded by the bequest to them of the $1,000 in her will, as set out above. On the other hand, appellees contend that the gift was complete and that the conversations between the testatrix and Mr. and Mrs. Lamont Rowlands established a gift inter vivos under the rules of law governing the same, and that the mere fact of the property here involved remaining where it was in the servants' quarters of Mrs. Barnard's home was not sufficient in law to sustain the argument that the testatrix had not relinquished all dominion over the property and had not recognized the possession of appellees as being in their own right. In other words, appellees contend that it is not necessary, where property is at the time of the gift in the possession of the donee, as agent for the donor, or otherwise, that the donee should surrender to the donor the actual possession in order that the latter may redeliver it to him in execution of the gift, but a relinquishment by the donor of all dominion over the property and recognition of the possession of the donee as being in his own right is sufficient to prove the gift. This is the general rule laid down in 38 C. J. S. Gifts, Sec. 24, p. 803.

Appellant cites the case of Stewart v. First Nat. Bank & Trust Co. of Vicksburg, 192 Miss. 355, 5 So. (2d) 683, where the Court said, "Every element requisite to constitute a gift must be shown (Jones v. Jones, supra [162 Miss. 501, 139 So. 873]), and when such claim is asserted after the death of the alleged donor, it must be sustained by clear and satisfactory proof. 24 Am. Jur., Gifts, Sec. 133. Appellant offered no testimony to meet this burden and her claim can not be aided by any presumption of gift based upon the mere fact of possession," and other authorities to the same effect.

Appellant also cites the old case of Wheatly v. Abbott, 32 Miss. 343, to the effect that "the mere declaration of the donor, that he has made a gift of a personal chattel, unaccompanied by acts showing a delivery, or an absolute parting with all dominion and interest in it, are insufficient

to establsh a valid gift; and especially where his acts are inconsistent with his having parted with the possession and control over the chattel.'' In that case, however, an examination will show that after making the statements, the alleged donor moved this chattel, which was a slave, from place to place, maintained control and dominion over it, and denied making the gift. That case, therefore, is not in point on the facts here. Neither do we think that the case of Ford v. Byrd, 183 Miss. 846, 184 So. 443, supports the claim of appellant, because there was actual delivery of part of the bonds, although immediately restored to the possession of the donor for safe-keeping, which the court held was sufficient delivery. The donee was never in possession of the other part of the bonds, and the only thing with reference to the donation there was the statement by the donor, ''Juanita I have given Leona all of my bonds.'' In the present case, there was a symbolical delivery of possession when the testatrix invited Mr. Lamont Rowlands, when they were sitting on the terrace, to come with her, and took him to the servants' quarters and showed him this property and stated that she had given it to appellees. That was more than a mere statement, as is manifest, that she had given it.

In the case of Carradine v. Carradine's Estate, 58 Miss. 286, 38 Am. Rep. 324, this court said ''Delivery of personal property is essential to a gift, whether inter vivos or causa mortis, but it is not essential in either case that it should be simultaneous with the words of donation. It may either precede or succeed the words. If it precede the words, so that the property is already in possession of the donee, no new delivery is necessary; if it succeeds the words, it makes perfect that which was before inchoate.''

In George Young, Admr. v. Henry Young, Guardian, 25 Miss. 38, a father made a gift to his daughter of a slave, having called his children together and presented each of them with slaves, and those children who were of full age took the slaves thus given into possession. But the slave involved in that decision was given to an infant

daughter living with her father, and upon the death of the father, the administrator of his estate sued the guardian of this daughter for the recovery of the slave on the ground that there was no actual delivery of the slave, and the gift was therefore void. The court said: ''There is no direct proof on this subject; but there was sufficient to authorize the finding of the jury, that a delivery was in fact made. We must suppose that the father actually intended to make a complete and valid gift, from the fact that he had caused his children to assemble for that purpose; and an actual delivery, in the absence of evidence to the contrary, will be presumed to have been made to the minor. The possession of the father after the gift, was in law the possession of the donee who lived with him.'' Compare the assembly of the children of the donor in the case just cited with the escorting of Mr. Lamont Rowlands to the servants' quarters by Mrs. Barnard, the testatrix, with her statement that she wanted to show him something, and when arriving there, pointing out the household furniture therein, saying she had given this to appellees as she wanted them to have something to start housekeeping with. Unlike the provision for them in the will, she did not seek to restrain them by reward from leaving her, and inference may be reasonably drawn from her statement that they were free to go, as far as the gift was concerned, and use the property involved therein for housekeeping purposes. Whereas, in the bequest to them in the will, they would not be entitled to the same if they had quit her employ and had set up housekeeping for themselves.

Therefore, in our opinion, the gift of the property involved in this litigation was under the rules of law a completed gift inter vivos, made before the execution of the will by Mrs. Barnard, and hence having lost dominion over it, she was not the owner thereof at the time of making the will later, and could not, under the law, bequeath it to appellant. Being a woman of considerable wealth and important station in life, she is not to be presumed

to have attempted to bequeath what she knew did not belong to her when she executed the will. If the will had been made before the gift, there might be presented a more difficult case. But even in that event, under all of the circumstances of this case, and bearing in mind that testator's will does not become effective until the death of the maker thereof, who, in the meantime, may change her mind and dispose of the property described, contrary to the provisions of the will, it seems that the gift would nevertheless be sufficiently completed. In this case, according to the testimony of Mrs. Lamont Rowlands, the gift had been made before the will was executed, and the execution thereof later, even with the intent to include the property in controversy, would have been unavailing in aid of such a purpose, which purpose, however, does not appear from the record before us.

The executors did not list this property in the inventory, the appraisers did not report it, in recognition of the ownership thereof in appellees, and the answer of the executors admits the title thereto is in the appellees. The appellant, as may be seen by reference to devises and bequests to her, was liberally remembered in the will, one item of her inheritance being $20,000 in cash, and yet she argues that the rather modest bequest to appellees is evidence against their claim of this property as a gift, which argument a fortiori is equally forceful against her claim to the property in view of the extremely liberal treatment she received in the will.

The chancery court adjudged that on the oral and record evidence appellees are the owners of said property, and directed the executors to deliver the same forthwith to them. In our opinion, this decree of the chancery court was correct, and the same should be, and is, hereby affirmed.

Affirmed.